UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

        Plaintiff,

v.

Abdullahi Amin Parker,

        Defendant.

Case. No. 25-cr-307 (DWF/JFD)

**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS EVIDENCE AND ORDER DENYING MOTION FOR A *FRANKS* HEARING**

---

    The defendant, Mr. Parker, has moved to suppress evidence found in a warranted search of his grandfather's home[1] on 44th Avenue North in Minneapolis, Minnesota. A threshold issue has arisen as to whether Mr. Parker has sufficiently alleged that he personally has a protectible, Fourth Amendment, privacy interest in that apartment such that he is legally authorized to make a suppression motion in the first place. The Court finds that he has not and therefore recommends that his Motion to Suppress Evidence found in the search of that apartment (Dkt. No. 23) be denied. Because Mr. Parker's Motion for a *Franks* hearing (Dkt. No. 24) attacks the same search warrant and the Court finds that Mr. Parker cannot contest that warrant, the Court also, by Order, denies Mr. Parker's Motion for a *Franks* hearing.

---

[1] At different points the parties refer to the apartment as belonging to Mr. Parker's father or Mr. Parker's grandfather. The Court uses "grandfather" throughout, but whichever is correct, the important point for this Report and Recommendation is that the apartment is not Mr. Parker's.

In deciding this dispute, the Court has before it pre-hearing briefing on Mr. Parker's underlying suppression motions (Dkt. Nos. 23, 25, and 29) and pre-hearing briefing from the United States (Dkt. No. 26) on the suppression motions. The Court also has the benefit of supplemental briefs (requested by the Court) on whether Mr. Parker has established that he has a reasonable expectation of privacy in the 44th Avenue apartment. These supplemental briefs were filed by Mr. Parker (Dkt. No. 31) and the United States (Dkt. 32). Attached to the Supplemental Brief of the United States at Docket Number 32-1 is a copy of the application for a warrant to search the 44th Avenue apartment. That application includes the affidavit of Saint Paul Police Department Sergeant Michael Dunaski and the search warrant issued on the strength of that application by the Honorable Thomas J. Conley, district judge of Minnesota's Fourth Judicial District.

The Court limits its discussion of the facts to those needed to decide this single, narrow issue. Sergeant Dunaski, assigned to the Saint Paul Police Department's non-fatal shooting investigative unit, was probing a shooting that took place outside the Minnesota State Fair grounds just as the Fair closed for the night on Labor Day, September 2, 2024. The facts of the case are complicated and most of the facts do not bear on whether Mr. Parker had a protectible Fourth Amendment privacy interest in the 44th Avenue apartment. Suffice it to say that the chronological description of Sergeant Dunaski's investigation set out in his search warrant application affidavit shows Sergeant Dunaski developing information that eventually led Sergeant Dunaski to consider Mr. Parker and his younger brother as suspects and also led Sergeant Dunaski to believe evidence would be found in

the apartment on 44th Avenue North. (*See generally* Search Warrant Aff., Dkt. No. 32-1.) When interviewed by law enforcement before the search, Mr. Parker denied living at the 44th Avenue apartment and told law enforcement multiple times that he lived in Burnsville. (Mot. to Suppress 8, Dkt. No. 23.) Sergeant Dunaski applied for, and was issued, a warrant to search the apartment. When police executed the warrant they found incriminating evidence in the apartment, including three firearms, one of which appears to have been fitted with a "switch" that allows it to be fired on fully automatic mode, a speed loader, and a gun box. (Search Warrant Return 13, Dkt. No. 32-1 at 13.)

I. **Legal Standards**

Two legal doctrines are central to analyzing the issue before the court; (1) the Fourth Amendment's requirement that when law enforcement applies for a search warrant they demonstrate a "nexus" between the contraband sought and the place to be searched and (2) the requirement that a person cannot challenge a law enforcement search unless that person shows that his own constitutional rights, and not just the constitutional rights of another person, were violated.

A. Nexus

Mr. Parker argued, in a section of his pre-hearing brief headed "Lack of Nexus," that the warrant application made an insufficient showing of "nexus." (Def's Mot. to Suppress 7, Dkt. No. 23.) The nexus requirement in Fourth Amendment jurisprudence is the part of a probable cause analysis that requires the prosecution to demonstrate a connection between the place to be searched and the items the police are looking for.

3

"Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found *in a particular place*…" *United States v. Monte-Medina*, 570 F. 2d 1052, 1059 (8th Cir. 2009) (emphasis added). The requirement that the contraband will be found somewhere specific is often shorthanded as the "nexus" requirement. "The nexus required by the Fourth Amendment is … 'between the contraband [being sought] and the place to be searched.'" *United States v. Keele*, 589 F. 3d 940, 943 (8th Cir. 2009) (quoting *United States v. Tellez*, 217 F. 3d 547, 550 (8th Cir. 2000)). *See also United States v. Skarda*, 845 F. 3d 370, 376 (8th Cir. 2016) (quoting the same language from *Tellez*). This district has recognized that "[t]he nexus showing required by the Fourth Amendment need not be very significant," *United States v. Rios-Uscanga*, No. 16-cr-316 (RHK/KMM), 2017 WL 1534746 *3 (D. Minn. Mar. 3, 2017). The prosecution bears the burden of establishing nexus.

### B. Legitimate Privacy Interest in the Place Searched

The text of the Fourth Amendment states that it protects "the right of the people to be secure in *their* persons, houses, papers, and effects." U.S. Const., amend. IV (emphasis added). Consistent with this text, a defendant in a criminal case may challenge the admission of illegally obtained evidence only if the defendant's own constitutional rights have been violated. See *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted") (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). The Supreme Court has held that a person's Fourth Amendment rights are not infringed if

that person "is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property." *Id*. at 134. The person challenging the search bears the burden of establishing a subjective expectation of privacy and that the expectation is objectively reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable") (citing *Rakas*, 439 U.S. at 143-44).

While usually the requirement of a reasonable expectation of privacy requires that it be the defendant's own home that is searched in order for the defendant to be able to challenge the search, there are limited circumstances in which one can have a legitimate expectation of privacy in someone else's home. In *Minnesota v. Olson*, 495 U.S. 91, 98 (1990), the Supreme Court held that an overnight guest in a home has the sort of reasonable expectation of privacy that the Fourth Amendment protects. Persons present in a home for commercial purposes, however, do not. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

The person seeking to challenge the constitutionality of a law enforcement search has the burden of showing, from facts in the record, that they had the sort of relationship with a residence that gives rise to a Fourth Amendment-protectible interest in that place. *United States v. Perry*, 548 F. 3d 688, 691 (8th Cir. 2008). Under the current state of Eighth Circuit law, that means they must show that they either owned or rented the residence, or that they were an overnight guest in the residence.

## II.   Analysis

Mr. Parker first expresses the nexus requirement correctly, ("A finding of probable cause requires a search warrant affidavit to establish a nexus between contraband or evidence of a crime and the place to be searched") (Dkt. No. 23 at 7)), but then immediately and without citation to authority misstates the nexus doctrine as a requirement that there be a connection between the place to be searched and *the defendant*. (*Id.* at 8) ("Because suspicion that an individual committed a crime does not, on its own, establish probable cause to search that person's home, police must establish that the suspect actually lives at the premises to be searched in order to prove nexus"). Mr. Parker then devotes nearly a page of his motion to minimizing his connection to the 44th Avenue apartment and never returns to his initial, correct framing of the nexus requirement:

> Here, there is a question of whether Parker actually lives at the premises being searched, which is his father's apartment. During his interview with the police, Mr. Parker repeatedly stated that he lived in Burnsville, not at his father's residence in Minneapolis.

(*Id.*) Mr. Parker concludes his argument by writing that "[f]ailure to provide such information [that the suspect lives in the residence that the police are applying for a warrant to search] is fatal to a probable-cause presentation." (*Id.*) In a later brief, Mr. Parker re-emphasized his lack of connection to his grandfather's apartment, characterizing his connection to the apartment as "loose" and saying that "there is no compelling evidence that the defendant actually lives at his father's residence rather than in Burnsville." (Dkt. No. 29 at 3.)

6

By arguing that there is little or no evidence that Mr. Parker is connected to the apartment, Mr. Parker undercuts any claim he has to a legitimate, Fourth Amendment-protectible privacy interest in the 44th Avenue apartment. Mr. Parker's citation of *United States v. Frangenberg*, 15 F. 3d 100, 102 (8th Cir. 1994) is misplaced, because that case does not stand for the proposition that the prosecution can show nexus by showing that the suspect actually lives in the premises searched. At best, it appears that the district court decision appealed from in *Frangenberg* might have held that a protectible Fourth Amendment interest in the place to be searched is needed before a challenge to a search of that place will be heard, but even that is not part of the Eighth Circuit's holding.[2]

At the truncated motions hearing on November 14, 2025, Mr. Parker's attorney clarified that he meant to say that Mr. Parker had a protectible Fourth Amendment interest in the 44th Avenue apartment, but that the warrant application lacked probable cause because it failed to demonstrate nexus. Mr. Parker later gave a more thorough version of this argument in his supplemental brief on standing. As the undersigned understands it, part of Mr. Parker's argument against probable cause is that Mr. Parker read the warrant application as trying to show probable cause by establishing two premises: first, that Mr.

---

[2] There were two defendants in the *Frangenberg* case. The issue on appeal was whether a warrant to search a particular house was supported by probable cause. In an introductory paragraph setting the context for the dispute before it, the Eighth Circuit noted that the district court suppressed evidence as to the defendant who lived in the house, but not as to the defendant who was simply visiting the house, and that this was because the defendant who was just visiting "lacked standing to challenge the search." 15 F. 3d at 101. But the Eighth Circuit's opinion, as noted, is not about standing (for that matter, neither is it about nexus) and the statement quoted in the preceding sentence of this footnote is not a part of the *Frangenberg* Court's holding.

Parker possessed firearms and second, that he frequented the 44th Avenue apartment. From these two premises, again according to Mr. Parker's account, the prosecution asserts that the conclusion follows that there was probable cause to believe that firearms were in the apartment. If, Mr. Parker's argument continues, the evidence set out in the warrant application for the second premise—that Mr. Parker frequents the apartment—is inadequate, then the conclusion does not follow and therefore the warrant to search the apartment does not establish probable cause to believe firearms are in the apartment.

In asking the Court to recast his argument, Mr. Parker asks too much. He wishes this Court to find that on the facts in the record the prosecution has failed to prove that Mr. Parker lives at the 44th Avenue apartment, but that the very same record facts show that he himself has proven that he has a sufficient connection to the apartment to give him a legitimate expectation of privacy in the apartment. Recalling that the defendant in a criminal case must establish his legitimate expectation of privacy by facts in the record, the claim that the record facts show the truth of two opposite conclusions is untenable. Either those facts support the conclusion that Mr. Parker lived at the apartment, or they support the conclusion that Mr. Parker did not live at the apartment. It can be one or the other, but it cannot be both. Mr. Parker, because of his misapprehension of the nexus requirement, has stated several times that the facts in the record are insufficient to show that he lived at the apartment on 44th Avenue.

Although Mr. Parker did not attempt, in his opening brief, to show that he had a legitimate expectation of privacy in that apartment, in his supplemental brief filed after the

attempted motions hearing of November 14, he asserted that facts outside the record would show that he was employed as a personal care attendant and frequented the apartment in that capacity. (Dkt. No. 31 at 2-3.) He also asserts that he several times stayed overnight at the apartment, although he does not provide any details about how frequently he stayed overnight or when it was that he stayed overnight, and in any event he characterizes his overnight stays as always part and parcel of his work as a personal care attendant:

> Mr. Parker has worked as his grandfather's Personal Care Attendant since March 2024, a full year before the search warrant was executed. Throughout this one-year period, Mr. Parker routinely visited his grandfather at his Minneapolis residence to provide care and companionship. *During these visits*, Mr. Parker would sometimes stay overnight at his grandfather's residence.

(Dkt. No. 31 at 2–3) (emphasis added).

Finally, Mr. Parker asserts that when the police searched the apartment, they found his clothes, passport, and identification card in the apartment. (*Id*.) Although not cited by Mr. Parker, the United States notes that Mr. Parker's probation officer considered him to reside at the apartment (Dkt. No. 26 at 14), and that police surveillance saw Mr. Parker coming and going from the apartment building (although Sergeant Dunaski's search warrant affidavit never says that Mr. Parker was observed to stay overnight). (Dkt. No. 32-1 at 6.)

Mr. Parker's proffer of evidence that is not in the record raises two related questions. First, if these facts were established at a hearing, would they suffice to give Mr. Parker a legitimate expectation of privacy in the 44th Avenue apartment? Second, if they would, should the Court convene a hearing to give Mr. Parker an opportunity to supplement the

record? The Court finds that the first question should be answered in the negative and that therefore the second question need not be answered.

Being a personal care attendant who goes in and out of a residence does not give the personal care attendant a legitimate expectation of privacy in that residence. If this were the law, any business visitor – a repair person, a salesperson, a census taker – could claim a legitimate expectation of privacy in a place they went to solely for work. *Minnesota v. Carter,* 525 U.S. 83, 90 (1998), held that a person present on premises for commercial purposes does not have a reasonable expectation of privacy in those premises. An overnight visitor, however, does have a reasonable expectation of privacy in the place they stay overnight. *Minnesota v. Olson*, 495 U.S. 91, 98 (1990). While Mr. Parker does claim he spent the night at the apartment, he does not specify how frequently this happened, he does not say when this happened closest in time to the search, and he casts his overnight stays (as noted above) as a component of his work as a personal care attendant. Also, as described earlier, Mr. Parker denied to the police living at the apartment and while Sergeant Dunaski related surveillance evidence that definitely showed Mr. Parker at the apartment, there is before the Court no evidence that Sergeant Dunaski ever related an observation of Mr. Parker being at the apartment overnight.

Mr. Parker claims that his ability to come and go from the apartment, apparently at will, should also be considered by the Court, because "Courts have found that consistent and unrestricted access, such as being observed coming and going at will, sufficiently

demonstrates a defendant's ability to regulate access to the property."[3] The case he cites for this proposition, however, actually held that it is the ability to exclude others from the property, not an ability to come and go oneself, that is probative of possession and control of an item of property. *United States v. Feye*, 568 F. Supp. 962, 974 (N.D. Iowa 2021).

Lastly, Mr. Parker asks the Court to consider that the police found some of his personal property in the apartment. Mr. Parker cites no authority for the proposition that the presence of his personal property in a place supports an inference that he has a legitimate expectation of privacy in that place. While only a few courts seem to have written opinions in cases in which a defendant claims the presence of his personal property to be evidence that supports a claimed privacy interest, those courts have been dismissive of the claim. *See generally United States v. Tamborello*, No. CR 10-0028, 2010 WL 2802603 *2-3 (N.D. Ia. July 15, 2010); *United States v. Lane*, No. 8:08CR137, 2008 WL 3876194 *1-2 (D. Neb. Aug. 18, 2008).

It is Mr. Parker's burden to establish that he has a legitimate expectation of privacy in the place searched. He has not met his burden. He affirmatively undercut his claim that he has a Fourth Amendment-protectible interest in the apartment when he claimed in his Motion and in a later brief that the record facts were insufficient to show that he lived in the apartment, and when he at first said nothing at all about being an overnight guest in the

---

[3] This argument contradicts an argument Mr. Parker made earlier, Mr. Parker had argued that "the fact that the defendant was observed driving to the residence during police surveillance is insufficient to establish nexus [which Mr. Parker understood to be a showing that he lived at the apartment] because the defendant could have simply been visiting his family members who live at the residence."

11

apartment. Even if all the facts in both his briefs that favor Mr. Parker were assumed to have been established, they would not amount to facts sufficient to show a legitimate expectation of privacy. The apartment is not Mr. Parker's, but his grandfather's; Mr. Parker's status as a personal care attendant who visited the apartment for work does not confer standing on him; his post-hearing supplemental briefing does claim that he stayed overnight in the apartment, but in his capacity as a personal care attendant and without saying when or how frequently he stayed overnight. His arguments based on access misapprehend the governing law, and his arguments based on his personal possessions being in the apartment do not find support in the caselaw. In short, even if every fact proffered by Mr. Parker was established at a hearing, they would not be sufficient to show that Mr. Parker had a legitimate expectation of privacy in the apartment.

The undersigned respectfully recommends that Mr. Parker's motion to suppress evidence found in the apartment on 44th Avenue North be denied because Mr. Parker does not have a legitimate expectation of privacy in that apartment.

## Motion for a *Franks* Hearing

In *Franks v. Delaware*, 438 U.S. 154, 164, 171 (1978), the Supreme Court held that in certain circumstances the presumption of validity of an affidavit supporting a search warrant could be overcome and a person challenging a law enforcement search could "attack the veracity of a warrant affidavit after the warrant has been issued and executed" at a hearing. The hearing would be convened "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless

disregard for the truth, was included by the affiant in the warrant affidavit and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-156. If, after a hearing, the defendant has shown by a preponderance of the evidence that the warrant affidavit contains material false statements or material omissions, and if, with the false statements corrected or the omissions supplied, the warrant affidavit no longer shows probable cause, "the warrant must be voided and the fruits of the search excluded." *Id.*

Here, the Court recommends that Mr. Parker's challenge to the warranted search of his grandfather's apartment be denied because Mr. Parker has failed to show that he, personally, has a constitutionally-protected privacy interest in that apartment. This recommendation, if adopted by the district judge, is sufficient to dispose of Mr. Parker's Motion for a *Franks* hearing because that Motion is directed at the same search warrant, the one the police used to search the apartment of Mr. Parker's grandfather.

The Motion for a *Franks* hearing is denied.

This leaves only Mr. Parker's Motion for disclosure of informants. (Dkt. No. 22.) Having reviewed that Motion and the Response by the United States, the Court concludes that no hearing is needed on that Motion, which is taken under advisement on the papers as of today's date.

# CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Mr. Parker's Motion for a Franks Hearing (Dkt. No. 24) is DENIED; and

2. Mr. Parker's Motion for Disclosure of Informants (Dkt. No. 22) is taken under advisement on the papers as of today's date. An Order will issue in due course.

Further, **IT IS RECOMMENDED THAT:** Mr. Parker's Motion to Suppress Evidence (Dkt. No. 23) be DENIED, as Mr. Parker has not met his burden of demonstrating that his own constitutional rights were potentially violated when the police searched the apartment on 44th Avenue North in Minneapolis.

Dated: December 3, 2025

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge